**Electronically Filed
Supreme Court
SCWC-24-0000511
21-JUL-2026
10:43 AM
Dkt. 22 MO**

SCWC-24-0000511

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---

STATE OF HAWAI'I,
Petitioner/Plaintiff-Appellee,

vs.

KAI DELA CRUZ,
Respondent/Defendant-Appellant.

---

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-24-0000511; CASE NO. 1CPC-19-0001711)

MEMORANDUM OPINION
(By: Devens, C.J., McKenna and Ginoza, JJ.,
Circuit Judge Malinao, in place of Eddins, J., recused,
and Circuit Judge Kimura, assigned by reason of vacancy)

**I. INTRODUCTION**

After an eight-day jury trial, Respondent/Defendant-Appellant Kai Dela Cruz (Dela Cruz) was found guilty of murder in the second degree and sentenced to life with the possibility of parole.

Dela Cruz appealed his conviction to the Intermediate Court of Appeals (ICA), asserting that the Circuit Court of the First Circuit (circuit court) erred in: (1) denying his motion to

suppress statements he made to detectives of the Honolulu Police Department (HPD) during a custodial interrogation; (2) failing to obtain a valid Tachibana waiver of his right to testify; (3) failing to instruct the jury on Extreme Mental or Emotional Disturbance (EMED); and (4) allowing prosecutorial misconduct during closing arguments.

In a summary disposition order, the ICA vacated Dela Cruz's conviction and remanded the case for a new trial, finding that the circuit court failed to obtain a valid waiver of Dela Cruz's right to testify. Reviewing the circuit court's ultimate Tachibana colloquy, the ICA determined that the circuit court "did not elicit responses from Dela Cruz about whether anyone was forcing him not to testify, or whether the decision to not testify was his own." Finding this Tachibana issue dispositive, the ICA did not reach Dela Cruz's remaining points of error.

On certiorari, Petitioner/Plaintiff-Appellee State of Hawai'i (State) asserts two points of error: (1) the ICA erroneously concluded that the circuit court failed to obtain a valid waiver of Dela Cruz's right to testify; and (2) the ICA should have addressed Dela Cruz's remaining points of error. We agree with the State on both points.

First, the circuit court properly elicited Dela Cruz's waiver of his right to testify. The court engaged in two

2

Tachibana colloquies, one prior to jury selection and one after, wherein Dela Cruz indicated his decision not to testify. In each instance, the court advised Dela Cruz: (1) the decision to testify is "your decision"; and (2) "no one can prevent you from testifying should you choose to do so." Each time, Dela Cruz indicated that he understood the court. At the end of the second Tachibana colloquy, the court asked Dela Cruz, "[W]hat is your decision about whether you want to testify or whether you wish to remain silent?" Dela Cruz answered, "Remain silent."

We hold that the totality of the circumstances demonstrated an objective basis for concluding that Dela Cruz knowingly, intelligently, and voluntarily relinquished his right to testify. We vacate the ICA's decision on this basis.

Second, since we vacate the ICA's decision, open questions remain as to Dela Cruz's motion to suppress his statements given to HPD, his requested EMED instruction, and whether prosecutorial misconduct occurred during the State's closing argument. If the circuit court erred with respect to these other points, then there remains the further question of whether any such errors were harmless beyond a reasonable doubt. Accordingly, we remand this case to the ICA to address Dela Cruz's remaining points of error.

## II. BACKGROUND

### A. Circuit Court Proceedings

#### 1. Indictment

On November 26, 2019, Dela Cruz was indicted for murder in the second degree in violation of Hawai'i Revised Statutes §§ 707-701.5 (Supp. 2018) and 706-656 (2014).

#### 2. <u>Tachibana</u> Colloquies

An eight-day jury trial was held between March and April 2024.[1]  On the first day of trial, before jury selection started, the circuit court engaged Dela Cruz in a pretrial <u>Tachibana</u> colloquy[2]:

> Q.    Mr. Dela Cruz, <u>you have a Constitutional right to testify in your own defense.</u>  Do you understand what that means?
>
> A.    Yes.
>
> Q.    Although you should consult with your lawyer **<u>regarding the decision to testify, it is ultimately your decision, and no one can prevent from you</u>** [sic] **<u>testifying should you choose to do so.</u>**
>
>        Do you understand what that means?
>
> A.    Yes.
>
> Q.    <u>If you decide to testify, the prosecutor will be allowed to cross-examine you.</u>  Do you understand what that means?

---

[1]    The Honorable Shanlyn A. S. Park presided.

[2]    The portion of the trial transcript covering the pretrial <u>Tachibana</u> colloquy was not part of the record before the ICA.  The circuit court's minutes from March 20, 2024 indicated that the court engaged in a <u>Tachibana</u> colloquy at 8:31 a.m., but the transcript from that day started at 8:35 a.m.  After the State filed its certiorari application, this court ordered the court reporter to file the missing portion of the transcript, which was received by this court and entered into the record on appeal.

4

A.    Yes.

Q.    Do you have any questions about what happens if you choose to testify in the trial?

A.    Mm, no.

Q.    <u>You also have a Constitutional right not to testify and to remain silent.</u>  Do you understand what that means?

A.    Yes.

Q.    <u>If you choose not to testify, I will instruct the jurors that they cannot hold your silence against you in deciding your case.</u>

      Do you understand what that means?

A.    Yes.

Q.    Do you understand what happens if you choose not to testify?

A.    Yes.

Q.    Do you understand that everything that I have told you about your Constitutional -- do you -- sorry.

      <u>**Do you understand everything that I've told you about your Constitutional right to testify and your Constitutional right not to testify?**</u>

A.    <u>**Yes.**</u>

Q.    Do you have any questions about those rights?

A.    No.

Q.    If you have not testified by the end of the trial, I will briefly question you to make sure that it was your decision not to testify.  Do you understand that?

A.    Yes.

(Emphases added.)

At the close of the defense's case, Dela Cruz's counsel informed the court that Dela Cruz would not testify at trial.

The court then engaged Dela Cruz in a second (ultimate)

<u>Tachibana</u> colloquy:

>       THE COURT: . . . Mr. Dela Cruz, as I've discussed with you at the beginning of this trial, <u>you have a constitutional right to testify in your own defense.</u> Do you understand what that means?

>       [DELA CRUZ]: Yes, Your Honor.

>       THE COURT: Although you should consult with your lawyer **regarding the decision to testify, it is your decision, and no one can prevent you from testifying** should you choose to do so. Do you understand what that means?

>       [DELA CRUZ]: Yes.

>       THE COURT: <u>If you decide to testify, the prosecutor will be allowed to cross-examine you.</u> You've seen the way cross-examination works throughout the course of this trial. So do you understand what that means?

>       [DELA CRUZ]: Yes.

>       THE COURT: <u>You also have a constitutional right to not testify and to remain silent.</u> Do you understand what that means?

>       [DELA CRUZ]: Yes.

>       THE COURT: <u>If you choose not to testify, the jury will be instructed by me that it cannot hold your silence against you in deciding your case.</u> Do you understand what that means?

>       [DELA CRUZ]: Yes.

>       THE COURT: Have you had an opportunity to discuss with your lawyer about your right to testify and your right not to testify?

>       [DELA CRUZ]: One second.

>       (Counsel and client confer.)

>       [DEFENSE COUNSEL]: Could I have a sec with him, Judge?

>       THE COURT: Yes, of course.

>       (Counsel and client confer.)

6

THE COURT: All right. Mr. Dela Cruz, do you need additional time to consult with your lawyer about your decision on whether you want to --

[DELA CRUZ]: No, ma'am.

THE COURT: -- testify or whether you want to remain silent?

[DELA CRUZ]: (Shakes head.)

THE COURT: Have you had sufficient time to discuss this issue with your attorney?

[DELA CRUZ]: Yes.

THE COURT: And have -- and so **what is your decision about whether you want to testify or whether you wish to remain silent?**

[DELA CRUZ]: **Remain silent.**

(Emphases added.)

### 3. Verdict and Sentencing

On April 5, 2024, the jury found Dela Cruz guilty of murder in the second degree. Dela Cruz's sentence included life with the possibility of parole.

### B. ICA Proceedings

Dela Cruz appealed his conviction to the ICA, arguing that the circuit court erred in: (1) denying his motion to suppress his statement to HPD; (2) failing to obtain a valid waiver of his right to testify; (3) failing to instruct the jury on EMED; and (4) allowing prosecutorial misconduct during closing arguments.

The ICA vacated Dela Cruz's conviction and remanded the case for a new trial. The ICA determined that the circuit court

"did not elicit responses from Dela Cruz about whether anyone was forcing him not to testify, or whether the decision to not testify was his own," nor were the court's questions "tantamount to eliciting that information[.]" The ICA also pointed to this court's prior guidance that a trial judge should include in their colloquies the specific question, "Is anyone forcing you not to testify?" See State v. Martin, 146 Hawai'i 365, 380 n.10, 463 P.3d 1022, 1037 n.10 (2020).

Additionally, the ICA could not conclude that the circuit court's deficient colloquy was harmless beyond a reasonable doubt because the record did not reflect what Dela Cruz would have said if he testified.

Determining that the Tachibana issue was dispositive, the ICA did not address Dela Cruz's remaining points of error.

On certiorari, the State contends: (1) the ICA erred in concluding that the circuit court did not obtain a valid waiver of Dela Cruz's right to testify; and (2) Dela Cruz's remaining points of error should have been addressed.

### III. STANDARD OF REVIEW

"The validity of a defendant's waiver in a criminal case of the right to testify is a question of constitutional law reviewed by this court under the right/wrong standard." State v. Celestine, 142 Hawai'i 165, 169, 415 P.3d 907, 911 (2018).

8

**IV. DISCUSSION**

**A.    The colloquies provide an objective basis for finding that Dela Cruz knowingly, intelligently, and voluntarily relinquished his right to testify.**

Tachibana v. State, 79 Hawai'i 226, 900 P.2d 1293 (1995), established that when a defendant in a criminal case indicates an intention not to testify, the trial court must advise the defendant of their right to testify and must obtain an on-the-record waiver of this right.  Id. at 236, 900 P.2d at 1303.  The trial court should effect this advisement by engaging in a "colloquy" with the defendant that advises the defendant that:

1.   They have a right to testify;

2.   If they want to testify, no one can prevent them from doing so;

3.   If they testify, the prosecution will be allowed to cross-examine them;

4.   They have a right not to testify; and

5.   If they do not testify then the jury can be instructed about the right not to testify.

Id. at 236 n.7, 900 P.2d at 1303 n.7; Martin, 146 Hawai'i at 378, 463 P.3d at 1035.

As we stated in Martin:

> To accomplish the purposes of a true colloquy, we suggested that the trial court engage in a verbal exchange with the defendant at least twice during the colloquy in order to ascertain the defendant's "understanding of significant propositions in the advisement."  [State v. Chong Hung] Han, 130 Hawai'i [83,] 90, 306 P.3d [128,] 135 [(2013)].  We suggested the first verbal exchange occur after the court informs the defendant of the right to testify and of the

9

right not to testify and the protections associated with these rights, to obtain an affirmative or negative response as to the defendant's understanding of these principles. [Id.] at 90-91, 306 P.3d at 135-36. We also suggested a second verbal exchange after a defendant informs the court that the defendant does not intend to testify. [Id.] at 91, 306 P.3d at 136. We stated that as part of this inquiry, the trial court should elicit responses as to whether the defendant intends to not testify, whether anyone is **forcing the defendant not to testify**, and whether **the decision to not testify is the defendant's.** Celestine, 142 Hawai'i at 170-71, 415 P.3d at 912-13.

A defendant's right to testify is violated when the colloquy does not establish "an objective basis for finding that [the defendant] knowingly, intelligently, and voluntarily gave up" their right to testify. Han, 130 Hawai'i at 91, 306 P.3d at 136. Courts look to the totality of the facts and circumstances to determine whether a waiver of the right to testify was voluntarily and intelligently made. [Id.] at 89, 306 P.3d at 134.

Martin, 146 Hawai'i at 378-79, 463 P.3d at 1035-36 (emphases added) (footnote omitted).

Here, the circuit court engaged in two Tachibana colloquies. The first colloquy with Dela Cruz occurred before jury selection. Later, when Dela Cruz's counsel informed the circuit court that Dela Cruz would not testify after putting on his case, the court engaged in a second (or ultimate) Tachibana colloquy.

The ICA determined that the circuit court "did not elicit responses from Dela Cruz about whether anyone was forcing him not to testify, or whether the decision to not testify was his own." We respectfully disagree.

10

    **1.**     **The circuit court twice elicited an on-the-record response as to whether it was Dela Cruz's decision not to testify.**

During its initial pretrial colloquy, the circuit court advised Dela Cruz that the decision to testify was his own and that no one could prevent him from testifying:

> Q.     Although you should consult with your lawyer **regarding the decision to testify, it is ultimately your decision**, and **no one can prevent from you** [sic] **testifying** should you choose to do so.
>
> Do you understand what that means?
>
> A.     Yes.

(Emphases added.) Dela Cruz indicated that he understood.

The circuit court made the same advisement at the beginning of the second, ultimate <u>Tachibana</u> colloquy, with Dela Cruz again indicating his understanding:

> THE COURT: Although you should consult with your lawyer regarding the decision to testify, **it is your decision**, and no one can prevent you from testifying should you choose to do so. Do you understand what that means?
>
> [DELA CRUZ]: Yes.

(Emphasis added.) The court concluded this colloquy by asking what Dela Cruz's decision was:

> THE COURT: And have -- and so **what is your decision** about whether you want to testify or whether you wish to remain silent?
>
> [DELA CRUZ]: **Remain silent**.

(Emphases added.)

This record reflects that the circuit court advised Dela Cruz on two separate occasions that it was his decision to make

11

as to whether he wanted to testify. The court explicitly asked what <u>his</u> decision was regarding that right, to which Dela Cruz responded that he wished to remain silent. We thus find that, based on the totality of the circumstances, the court's colloquy was not deficient as to the question of whether it was Dela Cruz's decision not to testify.

2. **The circuit court's <u>Tachibana</u> colloquy was "tantamount" to eliciting a response as to whether anyone was forcing Dela Cruz not to testify.**

We also find that the circuit court appropriately elicited Dela Cruz's response as to whether anyone was forcing him not to testify.

The circuit court advised Dela Cruz twice that no one could "prevent" him from testifying but did not specifically ask whether anyone was "forcing" him not to testify. Both Dela Cruz and the ICA rely on this omission, citing the footnote in <u>Martin</u> in which this court stated that trial judges should include the specific question, "Is anyone forcing you not to testify?" in their <u>Tachibana</u> colloquies. <u>See</u> <u>id.</u> at 380 n.10, 463 P.3d at 1037 n.10 ("Trial judges should, however, include this specific question in their colloquies.").

Although trial courts should include this question, failing to do so is not necessarily fatal. Rather, as stated, "[c]ourts look to the totality of the facts and circumstances to determine

whether a waiver of the right to testify was voluntarily and intelligently made." Id. at 379, 463 P.3d at 1036.

In Martin, this court held that "although the circuit court did not the use precise terminology, 'Is anyone forcing you not to testify?' [during its Tachibana colloquies with the defendant,] the circuit court's questioning was tantamount to eliciting that information." Id. at 380, 463 P.3d at 1037. The Martin court noted the following:

> [I]n this case, the circuit court . . . advised Martin that he had the right not to testify and that **no one could prevent him from testifying.** In addition, the circuit court engaged in a verbal exchange with Martin at least twice during the colloquy in order to ascertain his "understanding of significant propositions in the advisement[,]" as suggested by Han, 130 Hawai'i at 90, 306 P.3d at 135 (citation omitted). The circuit court engaged in a verbal exchange with Martin after informing him of the right to testify and the right not to testify and of the protections associated with these rights. The circuit court also engaged in a second verbal exchange after it indicated to Martin its understanding that he did not intend to testify. **Although the circuit court did not ask Martin whether anyone was forcing him not to testify, it engaged in a third exchange with Martin, asking him if it was his decision not to testify.**

Id. (emphases added). Accordingly, although this court noted that trial judges should include the specific question, "Is anyone forcing you not to testify?", it did not hold that the omission of the question would be dispositive in determining whether a waiver of the right to testify was knowingly, voluntarily, and intelligently made.

Here, on two separate occasions, the circuit court expressly and explicitly advised Dela Cruz that no one could

13

"prevent" him from testifying, which conveyed that no one could force him not to testify. Dela Cruz verbally indicated his affirmative understanding both times and does not argue otherwise. Further, as stated, the circuit court concluded the ultimate Tachibana colloquy by asking Dela Cruz, "[W]hat is your decision about whether you want to testify or whether you wish to remain silent?" (Emphasis added.) In light of the totality of the circumstances here, we conclude that Dela Cruz's responses were tantamount to eliciting his testimony that no one was forcing him not to testify.

Additionally, Dela Cruz argues that the question of whether anyone was forcing him not to testify was particularly necessary "because Dela Cruz spoke privately with his trial counsel immediately before telling the trial court he did not want to testify." Dela Cruz does not cite any caselaw in support of this proposition, nor does he explain why conferring with his trial counsel immediately before answering the court's question would render necessary an additional explicit question or give rise to an inference that someone may have forced him not to testify.

On the contrary, and without more, the record indicates that Dela Cruz conferred with his counsel simply to discuss his right to testify and to remain silent. Dela Cruz spoke

14

privately with his counsel upon being asked, "Have you had an opportunity to discuss with your lawyer about your right to testify and your right not to testify?" After Dela Cruz conferred with his counsel, the court asked again by repeating its question, to which Dela Cruz answered, "Yes." Dela Cruz subsequently indicated that his decision was to remain silent. Thus, Dela Cruz's mid-colloquy discussion with his counsel does not indicate that he failed to validly waive his right to testify.

In summary, the trial transcript provides an objective basis for concluding that Dela Cruz knowingly, intelligently, and voluntarily relinquished his right to testify. We therefore conclude that Dela Cruz validly waived his right to testify.

**B.   Dela Cruz's remaining points of error should be addressed.**

As noted, the ICA did not reach Dela Cruz's remaining points of error, reasoning that the Tachibana issue was dispositive of the appeal. The parties submit that these other points of error should have been addressed. We agree.

Resolving the Tachibana issue in the State's favor, there are remaining and open questions as to whether the circuit court erred with respect to Dela Cruz's suppression motion, his requested EMED instruction, and the Deputy Prosecuting Attorney's closing argument. And if the circuit court did err,

15

there remains the further question of whether such error was harmless beyond a reasonable doubt.  See State v. Spies, 157 Hawai'i 75, 102, 575 P.3d 708, 735 (2025); State v. Hauge, 103 Hawai'i 38, 47, 79 P.3d 131, 140 (2003); State v. Locquiao, 100 Hawai'i 195, 203, 58 P.3d 1242, 1250 (2002).  Accordingly, we remand this appeal to the ICA for its determination on Dela Cruz's remaining points of error.

### V.  CONCLUSION

We conclude that the ICA erred in vacating the circuit court's Judgment of Conviction Sentence entered on July 16, 2024 and remanding for a new trial.  Therefore, we vacate the ICA's January 6, 2026 Judgment on Appeal.  We remand the case to the ICA to address the remaining three points of error raised by Dela Cruz in his Opening Brief.

DATED:  Honolulu, Hawai'i, July 21, 2026.


Stephen K. Tsushima
for petitioner

Henry P. Ting
for respondent

/s/ Vladimir P. Devens

/s/ Sabrina S. McKenna

/s/ Lisa M. Ginoza

/s/ Clarissa Y. Malinao

/s/ Jordon J. Kimura

